```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    **CENTRAL DIVISION at LEXINGTON**
```

| | | |
|---|---|---|
| FREDDIE L. SWANN, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | Civil Case No. |
| v. | ) | 5:17-cv-330-JMH |
| | ) | |
| | ) | |
| RYDER SYSTEM, INC., | ) | **MEMORANDUM OPINION &** |
| et al., | ) | **ORDER** |
| | ) | |
|     Defendants. | | |

\*\*\*

When Plaintiff Freddie Swann got hurt off the job, he could no longer work. Under an employer-sponsored insurance plan, Swann was entitled to disability benefits. No doubt about that. Indeed, he received both short-term and long-term benefits. But upon receiving his long-term benefits, Swann noticed that the payments were substantially less than what he expected. The claim administrator, Defendant Liberty Life Assurance Company of Boston ("Liberty") explained that the amount reflected 60 percent of Swann's "base pay," as calculated by Liberty and Defendant Ryder Systems, Inc. ("Ryder"), Swann's employer, in compliance with the plan.

Swann disputes Defendants' calculation of his base pay. Swann, a truck driver, argues his base pay includes money for stops, down time, and mileage, which Defendants left out. The difference is thousands of dollars per month. But because the

1

plan grants broad discretion to Defendants to determine Swann's long-term benefits, this Court is limited to narrow review of Liberty's decision under the Employee Retirement Income Security Act ("ERISA"). *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). And upon examination, the Court finds Defendants' determination was not arbitrary or capricious. Thus, for the reasons stated herein, Plaintiff's Motion for Judgment [DE 22] is **DENIED** and Defendants' Motions [DE 25, 26] are **GRANTED**.

I. **Background**

Swann drove truck for Ryder. [DE 1-3]. He began work in September 2015. [*Id*. at p. 6]. Four months later, Swann got hurt off the job. [*Id*. at p. 7]. His injuries prevented him from engaging in any gainful full-time work. [*Id*.]. So Swann applied for disability benefits under his employer-sponsored group disability insurance plan.

Initially, things went smoothly. Swann received short-term disability benefits for six months—the cap allowed by the plan. [*Id*.]. Once six months were up, Swann had to apply for long-term disability benefits. He did so, and Liberty began paying long-term benefits in July 2016. [*Id*.]. But the new benefit checks were substantially less than the short-term benefits. Swann wondered why, so checked with Liberty and Ryder.

The confusion stemmed from the calculation of Swann's "base pay." The plan documents relevant here comprise two documents:

(1) The Ryder System, Inc. Summary Plan Description and Benefit Programs (the "Plan") and (2) the Liberty Group Disability Income Policy (the "Policy").[1]  [Ryder R. 5, 22, 63].  The official plan documents include the Plan and "contracts between Ryder System, Inc. and the benefit administrators" (in this case, Liberty). [*Id.* at 22].  When an employee has a question about his plan, the plan documents—meaning both the Plan *and* Policy—govern the issue. [*Id.*].  But to the extent the Plan and Policy conflict, language of the Policy controls.  [Ryder R. 5].  Understanding Swann's claim requires the Court to look at the Plan and Policy in more detail.

We start with the Plan, which names Ryder as the Plan Administrator and grants the administrator broad discretion to determine "administer, apply and interpret all plans" and to "decide all factual and legal matters arising in connection with the operation of administration of the plans."  [Ryder R. 21].  In particular, the Plan grants the administrator "absolute discretional authority to . . . make all decisions (including factual decisions) with respect to . . . the amount of, benefits payable under the plans to employees or participants or their beneficiaries."  [*Id.*]. The discretion also extends to decisions about "legal or factual questions, relating to the calculation and

---

[1] The Administrative Record contains both documents.  For ease of reference, the Court will cite to the Ryder System, Inc. Summary Plan Description and Benefit Program using "Ryder R." followed by a page number.  The Court will cite to the Liberty Group Disability Income Policy using "Liberty R." followed by a page number.

3

payment of benefits, and all other determinations made under the plans" and resolving and clarifying "any factual or other ambiguities, inconsistencies and omissions." [*Id.*]. Such discretion is given to Ryder "or, where applicable, any duly authorized delegee of the plan administrator." [*Id.*].

The Plan names Liberty as the benefits administrator for the long-term disability benefits plan. [*Id.* at 22, 63]. And when describing long-term disability benefits, the Plan continually informs employees that the "insurance carrier"—i.e., Liberty—will be making the decisions. [*Id.* at 66, 68, 69, 70, 71, 72]. Indeed, in a section titled "Who to Send Your Claims and Appeals To," Ryder instructs employees to contact Liberty. [*Id.* at 55].

Finally, the Plan outlines pay for the purposes of disability benefits. The Plan first notes that "each benefit plan provides a slightly different definition" of earnings and that "earnings for any given benefit plan shall be defined under the portion of the SPD describing that plan." [*Id.* at 76]. The Plan then lists "examples" including base pay, weekly base pay, and monthly base pay, "**for the purposes of the STD plan.**" [*Id.*] (emphasis in original). The Plan *does not* define base pay for the purposes of the long-term benefits plan. But it does define "pre-disability earnings" for the purposes of the long-term plan as "your monthly rate of average earnings in effect on the day before you became disabled. Average earnings means the greater of your base pay or

4

the average of the previous 2 years of total earnings as of August 31, rounded to the next higher thousand." [*Id*.].

Now we turn to the Policy. This first uses the term "base pay" in its definition of "basic monthly earnings" as the "greater of the average of the previous two years of frozen pensionable earnings as of August 31 or frozen base pay established at each annual enrollment, rounded to the next higher thousand." [Liberty R. 7]. The Policy then provides that an employee's monthly benefit under the plan is based on the person's basic monthly earnings. [*Id*. at 21]. And like the Plan, the Policy provides broad discretion to the administrator: "Liberty shall possess the authority, in its sole discretion, to construe the term so this policy and to determine benefit eligibility hereunder. Liberty's decision regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding." [*Id.* at 42].

Although Swann disputed the calculation of base pay, he continued to receive benefits for five months. [DE 22, p. 2]. Liberty then terminated the benefits. [*Id*.]. Three months later, however, Liberty reinstated the benefits and paid benefits retroactively. [*Id*.]. But Liberty did not change its base pay calculation.

The nature of Swann's employment agreement was the source of the "base pay" dispute. As a truck driver, Swann earned 26 center

5

per mile and $18 per hour for "down time," as well as a fixed amount for "stops." [DE 1-3, p. 3]. In the final three-and-a-half months of 2015 (before getting injured), Swann earned $19,644.06. [*Id.*]. Only 18 percent of his pay came from "down time" and "stops." [*Id.*]. The rest was based on mileage. [*Id.*].

When he received short-term benefits, Swann's base pay included stops and mileage, as provided in the plan. [Ryder R. 76]. When short-term benefits expired, and he began receiving long-term benefits, Swann's base pay no longer included mileage and stops. Instead, Liberty paid his benefits based on his pay of $18 per hour. In so doing, Liberty found his base pay to be $37,440. [DE 22, p. 4]. This amounted to a long-term benefit payment of $1,900 per month. [*Id.*]. Swann argues that base pay should have included mileage and stops and should have been more than doubled. [*Id.*].

Swann filed suit in Madison County Circuit Court in July 2017 court for breach of contract against Ryder and Liberty. [DE 1-3]. But because the Employer Retirement Income Security Act ("ERISA") completely preempts state law, Defendants properly removed the case to federal court. [DE 1]. This is an action under ERISA's civil enforcement system, 29 U.S.C. § 1132. After the filing of the administrative record, the parties filed cross motions for judgment making this matter ripe for review. [DE 22, 25, 26, 27]

## II. Standard of Review

As a threshold matter, the parties dispute the standard of review. Swann argues the Court must apply *de novo* review because Liberty exercised no discretion in calculating his base pay. [DE 22, p. 4]. Defendants argue arbitrary and capricious review applies because the policy granted Liberty broad discretion.

An administrator's decision is normally reviewed de novo. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "But if the plan 'gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' we review such decisions under the arbitrary-and-capricious standard." *Clemons v. Norton Healthcare Inc. Retirement Plan*, --- F.3d ---, 2018 WL 2142640, at *6 (6th Cir. May 10, 2018) (quoting *Firestone*, 489 U.S. at 111, 115); *see also Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 437–38 (6th Cir. 2006).

Swann argues that Liberty did not exercise discretion because it calculated his long-term benefit based on information provided by Ryder. [DE 22, p. 5]. And because Liberty did not exercise discretion, Swann asks this court to apply *de novo* review. [*Id.*]. But the triggering event for *Firestone* deference is contractual language, not behavior. *Clemons*, 2018 WL 2142640 at *6. In other words, to determine whether arbitrary and capricious review applies we look to whether the words in the contract grant

7

discretionary authority to the administrator, not *how* the administrator exercised that discretion.

Here, the Policy states Liberty has the "authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder." [Liberty R. 42]. In addition, Ryder delegated to Liberty "the authority and discretion to take all actions and make all decision (including factual decision) with respect to eligibility for, and the amount of, benefits payable." [Ryder R. 21, 22, 63]. The language in both the Policy and the Plan invoke *Firestone* deference. *See Clemons*, 2018 WL 214264, at *6. Thus, arbitrary and capricious review applies. In applying arbitrary and capricious review, the Court will consider whether the administrator operates under a conflict of interest. *Firestone*, 489 U.S. at 115.

Under arbitrary and capricious review, the Court will uphold the administrator's decision that is "the result of a deliberate, principled reasoning process" that is "supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006). So long as the administrator's "interpretation of the Plan's provisions is 'reasonable'" the Court will uphold the administrator's interpretation. *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2009). "The arbitrary and capricious standard is the least demanding form of judicial review of administrative action." *Hunter v. Caliber Sys. Inc.*, 220 F.3d

8

702, 710 (6th Cir. 2000) (quoting *Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). Arbitrary and capricious review "must actually honor an extreme level of deference to the administrative decision." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) (internal quotations omitted). "Even if the Court would not have come to the same conclusion as the Plan Administrator, as long as there is a reasonable basis for the decision, it must be upheld." *Senzarin v. Abbot Severance Pay Plan for Employees of KOS Pharms.*, 361 F. App'x 636, 640 (6th Cir. 2011). During review, the Court is limited to the "consideration of the pre-packaged administrative record." *Rochow v. Life Ins. Co. of N. Am.*, 482 F.3d 860, 865 (6th Cir. 2007).

### III. Analysis

#### A. Proper Defendants

Before turning to the underlying claim, the Court will clarify the roles of the parties. The issue arises because Swann names both Liberty and Ryder as defendants, but at various times refers to one or the other, but not both. The two are not interchangeable for ERISA purposes, and the Court finds it necessary to address this issue.

ERISA cases often include both a claims administrator and plan administrator. *See Butler v. United Healthcare of Tn., Inc.*, 764 F.3d 563, 570 (6th Cir. 2014). The claim administrator is the

entity that "administers claims for employee welfare benefits plan and has authority to grant or deny claims." *Id*. The plan administrator "is usually the employer who adopted the benefit plan in question." *Id.* The "phrase 'plan administrator' should not be confused with the term 'claims administrator.'" *Id*. Here, all parties agree that Liberty is the claims (or benefits) administrator, and Ryder is the plan administrator. [DE 1-3, p. 5–6; 11, p. 1; 12, p. 2; 22, p. 2]. Swann named them both as defendants.

This case adds an additional wrinkle: the plan documents grant discretion to *both* Ryder and Liberty. [Ryder R. 21; Liberty R. 42]. In an ERISA case it "is not unique to have a situation where the plan administrator and claim administrator share discretion over the administration of the plan." *Fendler v. CAN Grp. Life Assurance Co.*, 247 F. App'x 754, 758 (6th Cir. 2007); *see also Butler*, 764 F.3d at 570; *Rud v. Liberty Life Assurance Co. of Boston*, 438 F.3d 772, 774 (7th Cir. 2006). When an insurance company acts as a claim administrator and possesses discretion to deny or grant claims, it qualifies as an ERISA fiduciary and is a proper defendant. *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006). Here, Liberty fits the *Moore* framework: an insurance company, acting as a claims administrator, given authority to grant or deny claims. *Id*. Liberty is thus a proper defendant.

That brings us to Ryder. The company sponsors the plan, and purchased insurance from Liberty. This does not mean, however, that Ryder is necessarily subject to suit. In *Moore*¸ the court dismissed the employer-sponsor because the insurance company (claims administrator) had authority to adjudicate the plaintiff's claims. *Id*. Thus, the claims administrator and not the employer was "the proper party defendant for a denial of benefits claim by Plaintiff." *Id*. (citing *Kennard v. UNUM Life Ins. Co.*, No. 01-217-B-K, 2002 WL 412067, at *1-3, (D.Me. Mar. 14, 2002)). In general, then, when an employer-plan administrator delegates broad discretion to an insurance company over claims administration, the insurance company-claims administrator is the proper defendant, not the plan administrator-employer.

But a plan administrator *can* still be a proper defendant when it exercises control over the administration of the plan. *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988). A claimant properly sues a plan administrator-employer "only with respect to those aspects of the plan over which he or she exercises authority or control." *Moore*, 458 F.3d at 438. "The question is whether [the plan administrator-employer] played any role in controlling or influencing Plaintiff's benefits decision." *Ciaramitaro v. Unum Life Ins. Co. of Am.*, 521 F. App'x 430, 438 (6th Cir. 2013). Put simply, "[u]nless an employer is shown to control

administration of a plan, it is not a proper party defendant in an action concerning benefits." *Daniel*, 839 F.2d at 266.

Here, the only possible way Ryder controlled Liberty's administration of the long-term disability policy was by providing salary data on which Liberty relied. [Liberty R. 57 (informing Swann's counsel that he would need to verify with Ryder how "*they are calculating*" Swann's salary)]. This arguably does not amount to "controlling or influencing" the benefits decision. *Ciaramitaro*, 521 F. App'x at 438. But it is not an argument Ryder makes. Instead of filing its own response to Swann's motion, Ryder incorporated Liberty's response, which focuses on the standard of review and whether Liberty's determination satisfies them. [DE 25, 26]. Because this issue was never raised and briefed, the Court will assume that Ryder is a proper party.

### B. Determination of Base Pay

Under the "least demanding form of judicial review," the determination of Swann's Basic Monthly Earnings was not arbitrary and capricious. *Hunter*, 220 F.3d at 710. The Plan and Policy contain no definition of base pay for the long-term disability plan. And the Policy grants Liberty discretion to interpret the terms of the Policy. In determining Swann's Basic Monthly Income, then, Liberty relied on Swann's data, which indicated a base pay of $18 per hour. [DE 22, 25]. As Liberty argues, it did not have access to Swann's records, other than through Ryder; thus, its

determination to use the $18 per hour to calculate Swann's benefits makes good sense. Liberty took Swann's hourly rate, came up with a monthly amount, and multiplied by 60 percent (as the Policy requires) to determine Swann's benefits amount.

Swann argues that base pay should have included money for mileage, down time, and stops. [DE 22]. And he points to the definition of short-term benefits, which specifically includes those items. [Ryder R. 76]. But the fact that those payments are included as part of the definition for short-term benefits, but *excluded* in the definition for long-term benefits only strengthens Defendants' position that additional payments were *not* part of base pay for long-term benefits. As the Plan states, "earnings" is defined differently for each plan. [*Id.*]. Thus, there is no reason to think that base pay would be the same for short-term and long-term plans.

Swann argues that Defendants "cannot arbitrary create [their] own definition or calculation of base pay." [DE 22, p. 6]. He also argues there "is no evidence in the record to support" the base pay calculation. [*Id.* at p. 8]. Not so. The calculation was not pulled out of thin air. Ryder had an agreement with Swann to pay him $18 per hour. Email exchanges show Liberty explained to Swann how the calculation worked. [Ryder R. 108, 109; Liberty R. 57]. With discretion to construe basic monthly earning under the Policy, Liberty acted reasonably in using Swann's salary

information as a basis for his benefits. This is not arbitrary and capricious.

Assuming, again, that Ryder is a proper defendant, it did not act arbitrarily and capriciously. Ryder supplied data to Liberty, and Liberty then determined long-term benefits. Swann argues that Ryder, by supplying salary information that he earned about $38,000 per year, was unreasonable. But in fact that *is* what Swann was due to make based on his per-hour rate. True, his *total* earnings would be higher because he would receive money for mileage, stops, and down time. But (1) these payments were never included in the definition of long-term benefits, and (2) Defendants had discretion to determine base pay for long-term benefits purposes. The fact that Swann did not like *how* Defendants exercised their discretion does not mean that decision is arbitrary and capricious.

Finally, Swann argues that Ryder was operating under a conflict of interest. This occurs when the administrator is "both the decision-maker, determining which claims are covered, and also the payor of those claims." *Calvert v. Firestar Fin. Inc.*, 409 F.3d 286, 292 (6th Cir. 2005). This is a factor that must be taken into account in determining whether an administrator's decision is arbitrary and capricious. *Id*. A party alleging a conflict of interest, however, must point to something more than the "general observation that [defendants] had a financial incentive to deny the claim." *Judge v. Metropolitan Life Ins. Co.*, 710 F.3d 651,

664 (6th Cir. 2013). In other words, a plaintiff must point to some reason why the Court should give the conflict significant weight other than the mere fact that a defendant is both the decision-maker and payor. *Gilewski v. provident Life and Accident Ins. Co.*, 683 F. App'x 399, 409 (6th Cir. 2017).

Here, Swann provides no reason for the Court to give significant weight to any conflict. First, as discussed, Liberty had the authority to grant or deny claims, not Ryder. But Swann claims that Ryder has the conflict. He never identifies a conflict for Liberty. And in any event, Swann merely states that Ryder is the decision-maker and payor, but gives the Court no reason to think a conflict actually influenced any decision here. Thus, there is no conflict that makes the administrative decision arbitrary and capricious.

IV. Conclusion

Accordingly, for the foregoing reasons, **IT IS ORDERED:**

(1) That Plaintiff's Motion for Judgment [DE 22] is **DENIED;**

(2) That Defendants Motion for Judgment [DE 25, 26] is **GRANTED.**

This the 23RD day of May, 2018.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge